# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARY FETZER and<br>EDWARD FETZER,<br><br>   Plaintiffs,<br><br>   v.<br><br>WAL-MART STORES, INC.,<br><br>   Defendant. | Case No. 13-cv-9312<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

On July 6, 2016, Defendant Wal-Mart Stores, Inc. ("Wal-Mart") filed a motion to bifurcate trial in the subject case on the issues of liability and damages. Def.'s Mot. Bifurcate [339]. Plaintiffs Mary and Edward Fetzer oppose the motion. *See* Pls.' Resp. Def.'s Mot. Bifurcate [352]. As explained more fully below, bifurcation decisions are fact dependent and subject to the Court's discretion. In ascertaining whether bifurcation is appropriate, the Court must first determine if separate trial phases would avoid prejudice to a party or promote judicial economy. Next, the Court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. Here, a trial bifurcated between liability and damage phases that proceeds before the same jury maximizes the potential for judicial economy and removes undue prejudice towards Defendant, but does not unfairly impair Plaintiffs or implicate Seventh Amendment concerns. As a result, Defendant's motion is granted.

1

## I. Background

### A. Facts

At approximately 7:40 p.m. on March 5, 2013, Plaintiff Mary Fetzer arrived at the Crystal Lake, Illinois Wal-Mart to pick up a prescription. Mem. Op. and Order [280] 17. It was snowing outside and had snowed for most of the day. *Id*. Ms. Fetzer entered the Wal-Mart and walked directly to the pharmacy pick-up counter, where she learned that her medication was not ready. *Id*. Ms. Fetzer began to browse the pharmacy department as she waited for her prescription. While in the cough and cold aisle, Ms. Fetzer fell and sustained substantial injuries. *Id*.

### B. Issues Surrounding Liability

Pleadings in the subject case indicate that liability will be strongly contested and will center upon two complex subjects: (1) the Crystal Lake Wal-Mart's roof; and (2) Ms. Fetzer's prior medical history.

#### 1. Wal-Mart Store's Roof

Ms. Fetzer claims that her fall was caused by water that fell from a roof leak. Mem. Op. and Order [280] 19-21. In support of this claim, Plaintiffs intend to present testimony from employees and customers that flaws in the Crystal Lake Wal-Mart roof were well known. *Id*. at 24-26. Moreover, according to one of Plaintiffs' experts, the membrane comprising the roof, Thermoplastic Polyolefin ("TPO"), was prone to failure. Pls.' Resp. Def.'s Mot. Bifurcate [352] Ex. 1 at 4. Plaintiffs claim that Defendant failed to effectively repair these deficiencies,

2

monitor floor conditions during inclement weather, or warn customers of the likelihood of slip hazards. Mem. Op. and Order [280] 27-29.

While Defendant acknowledges that the Crystal Lake Wal-Mart roof experienced defects prior to March 5, 2013, it maintains there is no credible evidence of a leak at the specific time and place of Ms. Fetzer's fall. Def.'s Mot. Bifurcate [339] 1. Moreover, one of Defendant's experts opines that, given the specific angle and makeup of the roof, it is unlikely that water traveling through an old leak would flow to the pharmacy aisle where the accident occurred. Def.'s Reply Supp. Mot. Bifurcate [363] Ex. 1 at 7.

### 2. Ms. Fetzer's Prior Medical History

In addition to claiming that the roof and floor were adequately maintained, Defendant is expected to argue that Ms. Fetzer's fall was not precipitated by water, but rather pharmaceutical intoxication and/or withdrawal. *See generally* Def.'s Reply Supp. Mot. Bifurcate [363] Ex. 6. According to Defendant, Ms. Fetzer's medical records indicate high levels of benzodiazepine use in the weeks preceding her fall. *Id.* at 14-15. Consequently, Defendant claims Ms. Fetzer was "severely chemically/pharmacologically affected" on the evening of March 5, 2013, which led to a loss of consciousness that resulted in her collapse. *Id.*

Defendant believes this medical evidence is buttressed by expert biomechanical analysis. Def.'s Reply Supp. Mot. Bifurcate [363] Ex. 3. Defendant proffers that Ms. Fetzer's alleged brain and skull injuries, combined with the lack of

3

injury to other parts of her body, is "biomechanically inconsistent" with the injuries expected from a conscious fall. *Id*. at 10.

Plaintiffs believe that Defendant's claims on this subject are based upon speculative expert testimony and faulty inferences. Pls.' Resp. Def.'s Mot. Bifurcate [352] 5-6.

### C. Issues Surrounding Damages

Regarding damages, Ms. Fetzer claims significant physical injuries, including a right temporal fracture, subarachnoid hemorrhage, and subdural hemorrhage. Def.'s Mot. Bifurcate [339] 4. According to Defendant, Ms. Fetzer has received ongoing treatment from numerous medical facilities and health care providers, and claims to be completely disabled as a result of her fall. *Id*. Plaintiffs have also retained damages experts to testify that Ms. Fetzer cannot live independently or engage in competitive employment, and will require ongoing future medical care for the rest of her life. *Id*. Ms. Fetzer's claimed past medical bills exceed $520,645.71, and Plaintiffs expect future care to cost between $12,525,700 and $16,425,000. *Id*.

Additionally, Plaintiffs seek punitive damages for what they deem "willful and wanton misconduct" on the part of Defendant. First Am. Compl. [64] 4-5. Plaintiffs allege that Defendant knew that the Crystal Lake Wal-Mart's roof created an unreasonably dangerous condition that jeopardized its customers' safety, yet consciously disregarded the apparent risk by failing to take corrective action. *Id*.

In response, Defendant claims that Ms. Fetzer possesses a "truly remarkable past medical history" that involves severe pre-existing cognitive, physical, and

4

emotional impairments. Def.'s Reply Supp. Mot. Bifurcate [363] Ex. 6 at 15. Defendant believes that a portion of Ms. Fetzer's present and future circumstance is attributable to these prior medical conditions. *Id.*

### D. Anticipated Witnesses

Currently, the parties have retained at least nineteen experts.[1] Def.'s Mot. Bifurcate [339] 2-3; Pl.'s Sur-Reply [369] 8. Of these, nine experts are medical witnesses.[2] *Id.* Five experts assess the propriety of the Crystal Lake Wal-Mart's roof.[3] *Id.* One expert is a biomechanical expert. The remaining four experts project Ms. Fetzer's future damages.[4]

Additionally, Defendant anticipates that the parties may call ten to twenty lay witnesses regarding liability—including at least fourteen Wal-Mart employees, one customer witness, and various building maintenance representatives—as well as seven to twelve medical providers regarding present and future damages. *Id.*

---

[1] These experts are: (1) Barry Parsons; (2) Daniel Robison; (3) Norman Golinkin; (4) Sandra Metzler; (5) Jerry O'Connor; (6) Fabian Patin; (7) Anthony Gamboa; (8) Brian Greenwald; (9) Jeri Morris; (10) Patricia Cline; (11) Randall Benson; (12) Robert Barkin; (13) Gregory Christoforidis; (14) David Hartman; (15) Tricia Johnson; (16) Lisa Rone; (17) Linda Schweiger; (18) Thomas Zweber; and (19) Michael Freeman.

[2] Plaintiffs have disclosed a physical medicine and rehabilitation physician; neuropsychologist; neurologist; and epidemiologist. Defendant has disclosed a pharmacologist; neuroradiologist; psychologist; psychiatrist; and an expert in physical medicine/electrodiagnostics.

[3] Plaintiffs have disclosed a retail operations safety and food safety expert and a licensed architect. Defendant has disclosed an engineer; a civil and structural engineer; and a licensed architect.

[4] Plaintiffs and Defendant have each disclosed an economist and life care planner.

5

**III.   Legal Standard**

Federal Rule of Civil Procedure 42(b) provides:

For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The burden is on the "moving party to show that bifurcation is proper." *Telewizja Polska USA, Inc. v. EchoStar Satellite Corp.*, No. 02-cv-3293, 2005 WL 2405797, at *4 (N.D. Ill. Sept. 28, 2005). The Seventh Circuit has outlined a three-step test for determining when bifurcation is appropriate:

First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment.

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (internal citations omitted). As this framework indicates, the "decision to bifurcate centers on a balance of equities." *A.L. Hansen Mfg. Co. v. Bauer Prod., Inc.*, No. 03-cv-3642, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004). As such, "courts must evaluate each motion on its own merits," *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015), and "balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). Ultimately, "Rule 42 is read in light of the overarching policy principle behind the Federal

6

Rules, which seeks the just, speedy, and inexpensive resolution of every trial." *A.L. Hansen Mfg. Co.*, 2004 WL 1125911, at *2.

While bifurcation remains "the exception, not the rule," *THK Am., Inc. v. NSK Co.*, 151 F.R.D. 625, 631 (N.D. Ill. 1993), courts in this district have found it "important that it be encouraged where the experience has demonstrated its worth." *Ojeda–Beltran v. Lucio,* No. 07-cv-6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008) (citations omitted); *Estate of McIntosh v. City of Chicago*, No. 15-cv-1920, 2015 WL 5164080, at *2 (N.D. Ill. Sept. 2, 2015).

Generally, "determination of whether the situation dictates separate trials is committed to the 'informed discretion' of the court." *Magnavox Co. v. APF Elecs., Inc.*, 32 Fed. R. Serv. 2d 1159 (N.D. Ill. 1981); *Awalt v. Marketti*, 75 F. Supp. 3d 777, 779 (N.D. Ill. 2014). A court's bifurcation decision will be overturned "only upon a clear showing of abuse." *Houskins*, 549 F.3d at 495; *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).

**III. Analysis**

**A. Step One: Does Bifurcation Avoid Prejudice To A Party Or Promote Judicial Economy?**

**1. Judicial Economy**

Here, bifurcation of liability and damages would serve judicial economy because "litigation of the first issue might eliminate the need to litigate the second issue." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). Of course, "in every case, 'there is a speculative possibility that judicial economy will be served if the accused . . . prevails on the liability issue, thus eliminating the

7

need to consider other issues." *A.L. Hansen Mfg. Co.*, 2004 WL 1125911, at *2 (quoting *Pfizer, Inc. v. Novopharm, Ltd.*, 57 U.S.P.Q.2d 1442, 1444 (N.D. Ill. 2000)). This Court, however, looks to two factors which demonstrate whether this potential benefit sufficiently "tips the balance in favor of bifurcation." *Id.* (citing *Clintec Nutrition Co. v. Abbott Labs.*, No. 94-cv-3152, 1995 WL 228988, at *5 (N.D. Ill. April 14, 1995)). First, the Court examines "the likelihood that a finding of no liability will actually occur: where the movant can make a *prima facie* showing of success, this Court is more likely to grant bifurcation in the interests of judicial economy." *Id.* Second, "where substantial time and effort will be saved by a finding of no liability, the Court is more likely to grant bifurcation. In other words, if the movant can show that the additional issues avoided by a finding of no liability are complex and time consuming, the Court is more likely to bifurcate." *Id.*

Regarding the first factor, the parties present strongly conflicting evidence concerning both the condition of the Crystal Lake Wal-Mart's roof and Ms. Fetzer's pre-accident medical history. This Court cannot accurately forecast the likely victor of these debates from paper alone. Thus, from the current record, Defendant "cannot demonstrate any likelihood that it will prevail on liability," rendering the first factor inapplicable.[5] *Id.*

The second factor, however, weighs in favor of bifurcation. Issues related to damages in this case are both complex and time consuming. To begin, Plaintiff claims she cannot live independently or engage in competitive employment and

---

[5] This finding is consistent with Judge Gottschall's prior ruling largely denying Defendant's Motion for Summary Judgment. Mem. Op. and Order [280].

requires ongoing medical care. Plaintiff monetizes this future care in an amount between $12,525,700 and $16,425,000. The parties have girded themselves to litigate the scope of this liability by retaining their own economists and life care planners. Therefore, a finding of no liability would eliminate the testimony of at least four expert witnesses, as well as considerable supporting documentary evidence.

Moreover, in any damage assessment, Defendant will undoubtedly argue the contributory effects of Ms. Fetzer's pre-existing medical conditions. Untangling the effects of Ms. Fetzer's prior cognitive, physical, and emotional impairments from her present and future circumstance will demand extensive, complex testimony from the parties' medical experts. A liability determination in favor of Defendant will significantly reduce this undertaking.

Admittedly, certain issues of liability and damages are intertwined. In addition to Ms. Fetzer's medical history, the physical trauma caused by Ms. Fetzer's fall is probative to both Plaintiffs' damages and Defendant's liability defense that Ms. Fetzer's collapse is biomechanically inconsistent with a conscious fall. Similarly, the severity of the Crystal Lake Wal-Mart's roof issues, and Defendant's knowledge thereof, is relevant to both Defendant's liability and Plaintiffs' punitive damages claim. As a result, even after bifurcation, it is inevitable that damages evidence will appear in the liability phase of trial.

Plaintiffs argue that such overlap "will result in the need for many witnesses to appear twice, substantially increasing the length and expense of trial[.]" Pls.'

9

Resp. Def. Mot. Bifurcation [352] 7. Plaintiffs' fears are overstated, however, because the Court will not impanel a second jury in the event that a damage phase becomes necessary. *See Sallenger v. City of Springfield*, No. 03-3093, 2007 WL 2683794, at *2 (C.D. Ill. Aug. 7, 2007). Rather, the damage phase of trial will proceed before the same jury, "eliminating much of the additional time and expense" to which Plaintiffs allude. *Id.* By utilizing the same jury, witnesses need not repeat damage evidence previously presented during the liability phase; a well-crafted jury instruction will suffice. Thus, Plaintiffs' reference to "wasteful repetition of evidence" is misplaced. Pls.' Resp. Def. Mot. Bifurcation [352] 6. The fact that "there may be some overlapping testimony" does not overcome a determination "that bifurcation of this trial is warranted." *See Comiskey v. United States*, No. 89-cv-8195, 1992 WL 296374, at *2 (N.D. Ill. Oct. 14, 1992).

In short, should liability be determined in favor of Defendant, bifurcation would completely eliminate the testimony of four expert witnesses (those that solely project Ms. Fetzer's future damages) and significantly reduce the testimony of at least nine others (the medical experts). Moreover, because the same jury will be utilized for both liability and damage phases, bifurcated findings in favor of Plaintiffs are unlikely to take significantly longer than a singular proceeding.

### 2. Prejudice to Wal-Mart

When "weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration." *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 621 (N.D. Ill. 2000); *Implant Innovations, Inc. v. Nobelpharma AB*, No. 93-cv-

7489, 1996 WL 568791, at *2 (N.D. Ill. Oct. 2, 1996) ("The 'major consideration' of a court applying Rule 42(b) 'is directed toward the choice most likely to result in a just final disposition of the litigation.'") (quoting *In re Innotron Diagnostics,* 800 F.2d 1077, 1084 (Fed. Cir. 1986)).

Here, Defendant fears that a jury may improperly consider purely damages evidence when assessing the issue of liability. Def.'s Mem. Supp. Mot. Bifurcate [340] 8. While such a worry may be overstated in most civil cases, it gains legitimacy in cases involving personal injury. *See Lagudi v. Long Island R. Co.,* 775 F. Supp. 73, 75 (E.D.N.Y. 1991) ("[T]he proposition that evidence on the question of damages may well have a prejudicial effect on the jury is almost certainly true of any litigation; it is all the more so applicable to a personal injury action.").

Moreover, Defendant's concern carries additional weight given the extent of Plaintiffs' alleged injuries.[6] *See, e.g. Witherbee v. Honeywell, Inc.,* 151 F.R.D. 27, 29 (N.D.N.Y. 1993) ("[W]here, as here, there is evidence concerning the severity of a plaintiff's injuries, the lengthy treatment received, and the physical and economic impact of such injuries on the plaintiff, courts have found there is a potential that a jury may be adversely and improperly affected in considering the issues of liability fairly, impartially, and objectively."); *Lagudi,* 775 F. Supp. at 75 ("Evidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault.") (quotations omitted); *McKellar v. Clark Equip. Co.,* 101 F.R.D. 93, 95

---

[6] To this point, Defendant anticipates that Plaintiffs will move to introduce videotape and photographic evidence of Ms. Fetzer's physical condition. Def.'s Mem. Supp. Mot. Bifurcate [340] 6, 9.

(D. Me. 1984) ("[E]vidence concerning the severity of the Plaintiff's injuries, the lengthy treatment which the Plaintiff received from numerous physicians, and the physical and economic impact of those injuries holds a definite potential to adversely and improperly affect a jury's fair, impartial and objective consideration of the liability issues."); Charles Alan Wright, *Separate Trials—Separation of Liability From Damages*, 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed. 2016) ("[J]uries are moved by sympathy when they have heard evidence of the extent of the plaintiff's injuries and . . . this influences their decision on the liability issue."); Eunice A. Eichelberger, *Propriety of ordering separate trials as to liability and damages, under Rule 42(b) of Federal Rules of Civil Procedure, in actions involving personal injury, death, or property damage*, 78 A.L.R. Fed. 890, § 6[a] (1986) (citing cases).

Therefore, on the facts of this case, maximizing the separation of liability and damages presents the best means to obviate unfair prejudice to Defendant.

**B. Step Two: Does Bifurcation Unfairly Prejudice the Non-Moving Party?**

In contrast, separating trial into liability and damages phases presents minimal prejudice to Plaintiffs. As noted above, bifurcation may require that certain witnesses be recalled to present evidence purely related to damages, specifically, the nine medical experts retained by the parties as well as three to six treating physicians and paramedics. Pls.' Resp. Def. Mot. Bifurcate [352] 9. Of the nine retained experts, however, only four are retained by Plaintiffs. *See* Def.'s Mot. Bifurcate [339] 3; Pl.'s Sur-Reply [369] 8. Furthermore, most of Ms. Fetzer's lay

witnesses and treating physicians live or practice in McHenry and Lake Counties, a distance not far from this Court. Pls.' Resp. Def. Mot. Bifurcate [352] 9.

Plaintiffs also argue that bifurcation "presents a high risk" of jury confusion "arising from the fact that some evidence will be relevant for multiple issues." Pls.' Resp. Def.'s Mot. Bifurcate [352]. Plaintiffs' concern lacks merit. Jurors are smart enough to properly apply evidence, particularly when aided by the Court's instructions. Besides, Plaintiffs' fear would exist *regardless* of the Court's bifurcation determination. As such, it bears little relevance to the current analysis.

To the contrary, jury confusion is most likely to result from a *failure* to bifurcate. Here, a jury could find that Defendant possessed adequate notice of roof leaks (liability), but was not willful and wanton in its failure to remedy them (damages). Likewise, a jury may find that Ms. Fetzer's pre-existing medical conditions or prescription drug use played no role in her fall (liability), but nonetheless mitigate the level of future medical care attributable to Defendant (damages). Bifurcation allows the best opportunity for the jury to properly focus its efforts amongst these complex issues.

### C. Step Three: Would Bifurcation Violate the Seventh Amendment?

Questions in a single suit "can only be tried by different juries if they are so distinct and separable from the others that a trial of them alone may be had without injustice." *Houseman*, 171 F.3d at 1126 (quoting *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, (1931) (internal quotations omitted)). "In other words, the district court 'must not divide issues between separate trials in

such a way that the same issue is reexamined by different juries.'" *Id*. (quoting *Matter of Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995)). While "both juries can examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome." *Id.*

Here, utilizing the same jury for both liability and damages eliminates any Seventh Amendment concerns. *See Sallenger*, 2007 WL 2683794, at *2.

### IV. Conclusion

Defendant's Motion to Bifurcate [339] is granted. Trial in the subject case will be bifurcated between liability and damages phases and will proceed before the same jury. Both phases will take place during the previously scheduled trial dates. Subject to the Federal Rules of Evidence, the parties may present any evidence relevant to liability during the liability phase of trial. Any overlap of this evidence with issues related to damages will be adequately addressed through proper jury instructions. Any evidence probative solely to damages must be presented during the liability phase of trial, should one occur.

Date: November 21, 2016

                                       ENTERED:

                                       John Robert Blakey
                                       United States District Judge